Case No.  25-30445

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CODY GIBSON,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
Case No.  5:24-CR-115-4
The Honorable Judge Elizabeth E. Foote

_____

BRIEF BY DEFENDANT-APPELLANT, CODY GIBSON

_____

Douglas Lee Harville #27235
The Harville Law Firm, LLC
P.O. Box 52988
Shreveport, LA 71135-2988
Telephone:  (318) 222-1700
Telecopier: (318) 222-1701
Cell Phone: (318) 470-9582
lee.harville@theharvillelawfirm.com
Attorney for Cody Gibson

Case No.  25-30445

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CODY GIBSON,

Defendant-Appellant

CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.  United States of America, Plaintiff-Appellee.

2.  AUSA John Aaron Crawford, trial attorney for Plaintiff-Appellee.

3.  AUSA William Gaskins, trial attorney for Plaintiff-Appellee.

4.  AUSA Camille Ann Domingue, appellate attorney for Plaintiff-Appellee.

5. Cody Gibson, Defendant-Appellant.

6. Douglas Lee Harville, trial and appellate attorney for Defendant-Appellant.

7. The Honorable Judge Elizabeth E Foote.

8. The Honorable Mark L. Hornsby.

<u>/s/ Douglas Lee Harville</u>
Douglas Lee Harville, #27235
The Harville Law Firm, LLC
P.O. Box 52988
Shreveport, LA 71135-2988
Telephone:  (318) 222-1700
Cell Phone: (318) 470-0582
Telecopier: (318) 222-1701
lee.harville@theharvillelawfirm.com
Attorney for Cody Gibson

REQUEST FOR ORAL ARGUMENT

Defendant-Appellant, Mr. Cody Gibson, requests oral argument. This matter involves the resolution of Mr. Gibson's defense that the Government failed to prove beyond a reasonable doubt what controlled substance allegedly was involved in Mr. Gibson's transactions, none of which resulted in the seizure of methamphetamine or any allegedly controlled dangerous substance/ narcotic. Specifically, for the reasons set forth below, no reasonable juror could have found the Government proved beyond a reasonable doubt that Mr. Gibson (1) possessed with intent to distribute, distributed, conspired to distribute, or conspired to possess with intent to distribute methamphetamine; or (2) possessed with intent to distribute, distributed, conspired to distribute, or conspired to possess with intent to distribute 5 grams or more of methamphetamine.

Given the volume of the record on appeal, the numerous audio and video recordings, Cash App records, and the detailed record citations in Mr. Gibson's briefing, oral argument concerning the development of the facts and evidence in this case in relation to the relevant law would aid the decisional process significantly. This is particularly true as undersigned counsel also was trial counsel for Mr. Gibson.

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . .  i

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

STATEMENT OF JURISDICTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

No methamphetamine was recovered from Mr. Gibson.  The Government's case rested on (1) ambiguous phone calls, text messages, and Cash App records that could have referred to marijuana, methamphetamine, cocaine, crack cocaine, or any other controlled substance; and (2) speculative testimony from government witnesses.  Thus, did the Government fail to prove beyond a reasonable doubt that Mr. Gibson was guilty of (1) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute methamphetamine; or (2) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute 5 grams or more of methamphetamine?. .. . . . . 2

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    No methamphetamine was recovered from Mr. Gibson. The Government's case rested on (1) ambiguous phone calls, text messages, and Cash App records that could have referred to marijuana, methamphetamine, cocaine, crack cocaine, or any other controlled substance; and (2) speculative testimony from government witnesses. Thus, did the Government fail to prove beyond a reasonable doubt that Mr. Gibson was guilty of (1) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute methamphetamine; or (2) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute 5 grams or more of methamphetamine?.. . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.    Legal analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT . . . . 18

TABLE OF CITATIONS

Page(s)

CASES

*Jackson v. Virginia*,
      443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). . . . . . . . . . . . .  9

*United States v. Daniels*, 723 F.3d 562 (5th Cir. 2013). . . . . . . . . . . .  9, 12, 14


STATUTES

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

21 U.S.C. § 841(b)(l)(B)(viii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

F. R. App. Proc. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7

F. R. Cr. P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under 18 U.S.C. § 3742, as an appeal of a conviction and of a sentence imposed under the Sentencing Reform Act of 1984.  On August 7, 2025, a notice of appeal was filed timely as to the July 31, 2025, judgment, in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.  ROA. 14, 196-97.

## STATEMENT OF THE ISSUE

No methamphetamine was recovered from Mr. Gibson. The Government's case rested on (1) ambiguous phone calls, text messages, and Cash App records that could have referred to marijuana, methamphetamine, cocaine, crack cocaine, or any other controlled substance; and (2) speculative testimony from government witnesses. Thus, did the Government fail to prove beyond a reasonable doubt that Mr. Gibson was guilty of (1) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute methamphetamine; or (2) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute 5 grams or more of methamphetamine?

## STATEMENT OF THE CASE

A.    Relevant Facts[1]

At trial, the evidence established that no methamphetamine or other controlled dangerous substances/narcotics were recovered in any controlled buys or in/as a result of any other alleged narcotics/CDS purchase purportedly involving Mr. Gibson.  No search warrants were executed on Mr. Gibson, his home, his places of work, his vehicles, or any of his property, despite an extensive government investigation and the arrests and prosecutions of numerous alleged co-conspirators.  No car stops were attempted on Mr. Gibson, even when actively-monitored phone calls and observations indicated Mr. Gibson likely possessed CDS/narcotics.  Mr. Gibson was never approached to be a confidential informant.  In short, while Mr. Gibson allegedly was  seen engaging in alleged CDS-related/narcotics-related activity, no narcotics/CDS were recovered in relation to the Mr. Gibson.

---

[1]  The Government's testimony and evidence related to Mr. Gibson's alleged guilt is found at ROA. 322 (how the investigation determined Mr. Gibson's cell phone  number), ROA. 432-66 (the case agent's direct examination related to Mr. Gibson's alleged involvement), ROA. 466-509 (cross examination of the case agent related to Mr. Gibson's alleged involvement), ROA. 509-12 (the Government's redirect examination related to Mr. Gibson's alleged involvement), ROA. 520-40 (testimony related to surveillance of Mr. Gibson).

That is, the case against Mr. Gibson rested on (1) ambiguous intercepted phone calls, text messages, and Cash App records that arguably referred to methamphetamine but could have referred to methamphetamine, cocaine, crack cocaine, marijuana, or some other controlled substance; and (2) speculative testimony from government agents. Mr. Gibson did not testify and did not make any statements that were admitted into evidence at his trial that explicitly implicated Mr. Gibson in the charged methamphetamine conspiracy or the lone substantive count applicable to Mr. Gibson. (Admittedly, many phone calls, text messages, and Cash App records would appear to relate to transactions involving CDS/narcotics; however, there is nothing that proves beyond a reasonable doubt whether these phone calls, text messages, and Cash App records concerned methamphetamine, cocaine, crack cocaine, marijuana, or other CDS/narcotics.)

B.    Action before the District Court

On May 22, 2024, Mr. Gibson was charged as part of a 13-count Indictment. ROA. 2-3, 18-26. In part, the Government asserted that, "[b]eginning on or about November 1, 2023 and continuing through on or about February 14, 2024, in the Western District of Louisiana and elsewhere, the defendants, **Demetric Carey a.k.a "Spud", Jaworski Batton, Derrick**

**Carey, Cody Gibson, Antario Hawk, Eugene Henderson, Damien Rasco, Dana Ray, Holly Reynolds, Corey Russell, Lloyd Smith, Norell Washington**, and other persons known and unknown to the Grand Jury, did knowingly and intentionally conspire and agree together to distribute and possess with the intent to distribute methamphetamine, a schedule II substance, all in violation of Title 21, United States Code, Sections 841(a)(l) and 846." ROA. 18-19. The Government also alleged that, "[w]ith respect to the defendants, **Jaworski Batton, Derrick Carey, Cody Gibson**, and **Damien Rasco**, their conduct as members of the narcotics conspiracy charged in Count One, which includes the reasonably foreseeable conduct of the other members of the narcotics conspiracy charged in Count One, involved 5 grams or more of methamphetamine, a schedule II substance, in violation of Title 21, United States Code, Sections 841(a)(l) and (b)(l)(B)(viii) and 846." ROA. 19.

Finally, the Government also alleged a single substantive count against Mr. Gibson. ROA. 21. Specifically, the Indictment charged that, "[o]n or about January 18, 2024, in the Western District of Louisiana and elsewhere, the defendants, **Demetric Carey a.k.a "Spud"** and **Cody Gibson**, knowingly possessed with the intent to distribute 5 grams or more of methamphetamine, a

Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l) and (b)(l)(B)(viii)." ROA. 21.

Mr. Gibson entered pleas of not guilty on May 29, 2024. ROA. 4, 37-38.

On April 8, 2025, joint stipulations to evidence including lab reports were filed. ROA. 10, 119-21, 131-33.

On April 14, 2025, jury selection occurred. ROA. 10-11, 134-35. From April 14, to April 16, 2025, a jury trial occurred. ROA. 10-11, 134-39, 141-55. On April 16, 2025, the jury found Mr. Gibson guilty as charged. ROA. 11, 138.

Mr. Gibson made timely oral and written motions for judgment of acquittal, after the Government's case-in-chief, after the defenses rested, and after the jury returned the verdict. ROA. 136-39, 156-62. The Government opposed the motions, and the District Court denied the motions. ROA. 136-39, 164-68, 174-86.

The PSI, as amended, determined Mr. Gibson's total offense level was 24 and his criminal history category was II. Mr. Gibson's guideline sentencing range was 57 to 61 months of imprisonment. ROA. 627-28.

On July 29, 2025, the District Court sentenced Mr. Gibson to 60 months of imprisonment.  ROA. 14, 187-95, 620-42.  On August 7, 2025, a notice of appeal was filed timely as to the July 31, 2025, judgment, in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.  ROA. 14, 196-97.

## SUMMARY OF THE ARGUMENT

No methamphetamine was recovered from Mr. Gibson.  The Government's case rested on (1) ambiguous phone calls, text messages, and Cash App records that could have referred to marijuana, methamphetamine, cocaine, crack cocaine, or any other CDS/narcotic; and (2) speculative testimony from government agents.

For the reasons set forth below, the Government's case failed to prove Mr. Gibson was guilty as charged beyond a reasonable doubt.  Thus, Mr. Gibson's convictions must be reversed, his sentences must be vacated, and judgments of acquittal should be entered.  Alternatively, Mr. Gibson's convictions must be reversed, his sentences must be vacated, judgments of guilty must be entered on lesser included offenses, and this matter should be remanded for resentencing.

ARGUMENT

No methamphetamine was recovered from Mr. Gibson.  The Government's case rested on (1) ambiguous phone calls, text messages, and Cash App records that could have referred to marijuana, methamphetamine, cocaine, crack cocaine, or any other controlled substance; and (2) speculative testimony from government witnesses.  Thus, did the Government fail to prove beyond a reasonable doubt that Mr. Gibson was guilty of (1) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute methamphetamine; or (2) possession with intent to distribute, distribution, conspiracy to distribute, or conspiracy to possess with intent to distribute 5 grams or more of methamphetamine?

A.    Standard of Review

Because Mr. Gibson filed a timely motion for judgment of acquittal under F. R. Cr. P. 29, this Court reviews the denial of the motion *de novo*.  *United States v. Daniels*, 723 F.3d 562, 570 (5th Cir. 2013).  The *Daniels* court recognized that the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)."  *Daniels*, 723 F.3d at 570.

B.    Legal Analysis

1.    There was insufficient evidence for any rational juror to find beyond a reasonable doubt that Mr. Gibson possessed with intent to distribute, distributed, conspired to distribute, or conspired to possess with intent to distribute methamphetamine.

The Government's evidence against Mr. Gibson consisted of phone calls, text messages, and Cash App records between Mr. Gibson and Mr. Carey and phone calls between Mr. Carey and third parties on November 11, 2023 (Gov't Exs. 18 and 22), December 1, 2023 (Gov't Exs. 22, 24, 33-34, 40), December 3, 2023 (Gov't Exs. 35-36), January 17, 2024 (Gov't Ex. 16), January 18, 2024 (Gov't Exs. 17, 19-21), and February 1, 2023 (Gov't Ex. 23).  *See* ROA. 322 (how the investigation determined Mr. Gibson's cell phone number), ROA. 432-66 (the case agent's direct examination related to Mr. Gibson's alleged involvement), ROA. 466-509 (cross examination of the case agent related to Mr. Gibson's alleged involvement), ROA. 509-12 (the Government's redirect examination related to Mr. Gibson's alleged involvement), ROA. 520-40 (testimony related to surveillance on Mr. Gibson).

In relation to these communications, the Government recovered no methamphetamine or other CDS.  Never in any of these communications did Mr.

Gibson mention methamphetamine, any other CDS or narcotic, or any code word for methamphetamine or any other CDS or narcotic.

While the Government offered video surveillance of a transaction between Mr. Gibson and Mr. Carey, this video does not capture any specific CDS and certainly does not show methamphetamine. *See* Gov't Ex. 25. Mr. Carey did make a phone call after this transaction in which he referenced selling methamphetamine and other CDS that day. *See* Gov't Ex. 21. However, the Government could offer only conjecture as to whether the transaction between Mr. Gibson and Mr. Carey involved methamphetamine. *See* ROA. 459-61.

Similarly, the Government's Cash App records offer only conjecture as to whether the transactions between Mr. Gibson and Mr. Carey involved methamphetamine. *See* Gov't Ex. 38. Never in any of these Cash App records did Mr. Gibson mention methamphetamine or any code word for methamphetamine.

On the other hand, the Government's evidence established that Mr. Carey dealt multiple types of CDS, including methamphetamine, crack and powder cocaine, fentanyl, pills, and marijuana. ROA. 485, 492-96, 527. Indeed, when Mr. Carey was arrested multiple types of CDS were recovered. ROA. 506. Moreover, the evidence established that there was no fixed price for any quantity and/or type of CDS sold by Mr. Carey. ROA. 477, 484-86.

Therefore, a reasonable juror arguably could have found the Government proved beyond a reasonable doubt that Mr. Carey and Mr. Gibson were involved in multiple drug conversations and perhaps in multiple drugs deals. However, no reasonable juror could have found the Government proved beyond a reasonable doubt that Mr. Carey and Mr. Gibson were involved in any drug conversations or drugs deals involving methamphetamine.

Thus, based on the Government's trial evidence, this Court cannot "surmise the quantity of the . . . [methamphetamine] obtained" as there "are cryptic, vague phone calls[,]" text messages, and Cash App records and "in many instances there is no credible evidence to verify a transfer of drugs following each telephone conversation[, text message, and/or Cash App record,] or the actual amount transferred." *Daniels*, 723 F.3d at 572. Accordingly, no reasonable finder of fact could have found beyond a reasonable doubt any specific amount of methamphetamine that allegedly was attributable to Mr. Gibson in relation to this conspiracy.

2.  There was insufficient evidence for any rational juror to find beyond a reasonable doubt that Mr. Gibson possessed with intent to distribute, distributed, conspired to distribute, or conspired to possess with intent to distribute five (5) grams or more of methamphetamine.

The Government attempted to establish that Mr. Gibson bought ounce quantities of methamphetamine from Mr. Carey on multiple occasions.  ROA. 437. However, as noted above, no methamphetamine or other CDS was recovered in relation to these communications.  Further, the Government offered evidence as to only one day that Mr. Carey allegedly sold methamphetamine on the same date as any communications that Mr. Carey had with Mr. Gibson.

Assuming that Mr. Carey sold one ounce of "methamphetamine" to Mr. Gibson on that date, which is denied, the 28 grams of "methamphetamine" would have to have been more than 17.5% pure to equal 5 grams or more of pure methamphetamine.

The only methamphetamine the Government offered into evidence involved a transaction between Mr. Carey and Mr. Jaworski Batton, in which there was no evidence of involvement by, or knowledge of, Mr. Gibson.  This methamphetamine was from a "new" source for Mr. Carey.  ROA. 330-77.  So, the purity of this methamphetamine cannot support any inference as to the purity of any other methamphetamine sold by Mr. Carey.

Therefore, the Government did not even attempt to prove that the 28 grams of "methamphetamine" allegedly purchased by Mr. Gibson in January 2024 contained 5 grams or more of methamphetamine. For these reasons, no reasonable juror could have found the Government proved beyond a reasonable doubt that Mr. Gibson possessed with intent to distribute, distributed, conspired to distribute, or conspired to possess with intent to distribute 5 grams or more of methamphetamine.

Again, this Court cannot "surmise the quantity of the . . . [methamphetamine] obtained" as the Government's evidence was "cryptic, vague phone calls[,]" texts, and Cash App records, and "in many instances there is no credible evidence to verify a transfer of drugs following each telephone conversation[, text, and/or Cash App record,] or the actual amount transferred." *Daniels*, 723 F.3d at 572.

This evidence and the Government's failure to recover methamphetamine in relation to any of the phone calls, text messages, and/or Cash App records prevented the Government from proving beyond a reasonable doubt that Mr. Gibson was guilty as charged. For these reasons, Mr. Gibson respectfully submits the evidence was insufficient to sustain his conviction.

Alternatively, Mr. Gibson respectfully submits the evidence was insufficient to establish that any specific weight of methamphetamine was attributable to him and he is entitled to judgment of acquittal on the charges set forth in Counts 1 and 6. Instead, in the alternative, Mr. Gibson should be found guilty of only lesser included offenses .

Accordingly, Mr. Gibson's convictions must be reversed, his sentences must be vacated, and judgments of acquittal must be entered. Alternatively, Mr. Gibson's convictions must be reversed, his sentences must be vacated, judgments of guilty on lesser included offenses must be entered, and this matter must be remanded for resentencing.

<u>CONCLUSION</u>

For the above reasons, Defendant-Appellant, Mr. Cody Gibson, respectfully submits that this Court should reverse his convictions, vacate his sentences, and enter judgments of acquittal.  In the alternative,  this Court should reverse his convictions, vacate his sentences, enter judgments of conviction on lesser included offenses, and remand this matter for resentencing.

Respectfully submitted,

<u>/s/ Douglas Lee Harville</u>
Douglas Lee Harville #27235
The Harville Law Firm, LLC
P.O. Box 52988
Shreveport, LA 71135-2988
Telephone:  (318) 222-1700
Telecopier:  (318) 222-1701
lee.harville@theharvillelawfirm.com
Attorney for Cody Gibson

CERTIFICATE OF SERVICE

I, DOUGLAS LEE HARVILLE, certify that today, December 22, 2025, a copy of the Brief for Appellant was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to:

AUSA Camille Ann Domingue
Western District of Louisiana
800 Lafayette Street
Suite 2200
Lafayette, LA 70501, and

AUSA John Aaron Crawford, and
AUSA William Gaskins
United States Attorney's Office
Western District of Louisiana
300 Fannin Street
Suite 3201
Shreveport, Louisiana 71101,

by operation of the Court's electronic filing system.

I, DOUGLAS LEE HARVILLE, further certify that (1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5TH CIR. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Douglas Lee Harville
Douglas Lee Harville #27235

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.    This document complies with the word limit of FED. R. APP. P.
      27(d)(2) because, excluding the parts of the document exempted by
      FED. R. APP. P. 32(f):

      X     this document contains 2491 words, or

            this brief uses a monospaced typeface and contains ___ lines of
            text.

2.    This document complies with the typeface requirements of FED. R.
      APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P.
      32(a)(6) because:

      X     this document has been prepared in a proportionally spaced
            typeface using WordPerfect 12 Times New Roman 14, or

            this document has been prepared in a monospaced typeface
            using ___ with ___.


                                          /s/ Douglas Lee Harville
                                          Douglas Lee Harville #27235